292 F.3d 104
 In re Peter BOGDANOVICH & Louise Hoogstratten Bogdanovich, Debtors.
Gerald Schneiderman, Plaintiff,
Aly Spencer, and Barry Spencer, Plaintiffs-Appellees,
v.
Peter Bogdanovich & Louise Hoogstratten Bogdanovich, Debtors-Appellants.
 Docket No. 01-5007.
 United States Court of Appeals, Second Circuit.
 Argued: December 7, 2001.
 Decided: May 15, 2002.
 
 COPYRIGHT MATERIAL OMITTED Avrum J. Rosen, Law Offices of Avrum J. Rosen, Huntington, NY, for Debtors-Appellants.
 Herbert Rubin, New York, New York (David B. Hamm, Noreen M. Giusti, David Cohen, Herzfeld & Rubin, P.C., New York, NY, of counsel), for Plaintiffs-Appellees.
 Before: OAKES, CARDAMONE, and F.I. PARKER, Circuit Judges.
 CARDAMONE, Circuit Judge.
 
 
 1
 We have before us an appeal in a bankruptcy case. After plaintiffs obtained a multi-million dollar verdict in California state court against Peter Bogdanovich, Bogdanovich and his wife, Louise, filed a petition for bankruptcy in the Southern District of New York. In so doing the debtors obtained an automatic stay preventing plaintiffs from reducing their favorable verdict into a final judgment. In response to the stay, plaintiffs began an adversary proceeding in the same bankruptcy court arguing that the stay be lifted because the debt owed them — represented by the California verdict — was not one dischargeable in bankruptcy. The bankruptcy judge agreed and, on appeal, so did the district court judge. The debtors have appealed the order that lifted the automatic stay.
 
 
 2
 Congress made it a central purpose of the bankruptcy code to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts. This policy is limited to the so-called "honest debtor," such that certain debts incurred, for example, by fraud are not dischargeable in bankruptcy. Yet, when determining whether a given debt was obtained by fraud, the nature of the misrepresentations that led to the incurring of debt must be carefully analyzed, inasmuch as this nondischargeability exception itself has an exception. That is, false oral statements made by a debtor regarding his "financial condition" lead to a debt that is dischargeable, while false written statements of financial condition do not.
 
 
 3
 As the reader will see in the opinion that follows a question exists as to whether some of the misrepresentations in the case at hand satisfy the nondischargeability exception for fraudulent statements under 11 U.S.C. § 523(a)(2)(A). It is not clear what evidence was submitted to the California jury for consideration. As we explain below, the evidence relied on by the jury in the California action is the key to whether the California verdict is dispositive of the nondischargeability question. Thus, to justify lifting the stay, we would have to speculate on what evidence was presented to the jury. We decline to engage in such speculation because it could result in an advisory opinion. In light of this uncertainty in the California proceedings, the bankruptcy court abused its discretion when it lifted the stay, and so the district court's affirmance of that order must be vacated and the case remanded with instructions.
 
 BACKGROUND
 
 Sale of Plaintiffs' Home
 
 
 4
 In 1992 plaintiffs Aly and Barry Spencer decided to try to sell a home they owned in Beverly Hills. In July of that year they met William Peiffer, business manager for Peter and Louise Bogdanovich, who told the Spencers that the Bogdanovichs might be interested in purchasing plaintiffs' home and that he was acting as their agent.
 
 
 5
 During the ensuing negotiations for a possible sale, Peiffer is said to have made various oral representations that are the subject of the adversary proceeding in bankruptcy court. In particular, Peiffer allegedly indicated the Bogdanovichs authorized him to find them a place to live. He also said the Bogdanovichs wanted him to represent them in all financial matters, giving him full control over and access to their funds, requesting further that he manage their money for them and pay their bills on time. Peiffer, according to the Spencers, said he was hired after Peter Bogdanovich declared bankruptcy. It was his task to help Bogdanovich live within his means by monitoring and controlling his spending.
 
 
 6
 He maintained that as a result of his efforts the Bogdanovichs were now free of debt and had good credit. Peiffer also declared Bogdanovich's bankruptcy was a recent one that would prevent him from seeking such protection from his creditors for years. The agent also assured the Spencers that Peter Bogdanovich could afford to purchase their property and would make timely payments. He told the Spencers they could feel secure in the transaction because the Bogdanovichs would be stable buyers since Peter Bogdanovich hated to move. Peiffer characterized Peter Bogdanovich as an extremely honest and honorable man, one who paid his debts, as evidenced by the fact that the Bogdanovichs in the past had borrowed large sums of money from him, but always repaid him. Peiffer made other statements pertaining to Bogdanovich's career. The Spencers aver that he told them Peter Bogdanovich was a busy Hollywood movie director who did not have time to attend to his own business affairs, and had several "iron clad" movie deals that guaranteed him several million dollars.
 
 
 7
 Relying on Peiffer's representations, the Spencers sold their Beverly Hills home to the Bogdanovichs in 1992 for $1.95 million. The Spencers kept the mortgages, on which the Bogdanovichs were to make monthly payments for ten years, with title to pass upon full payment of the purchase price.
 
 
 8
 The Spencers now believe all of Peiffer's representations were false because several important facts were concealed from them. For example, they claim Bogdanovich's bankruptcy filing was not recent in relation to the real estate negotiations, but occurred four years prior to the sale of the house. They further think the so-called iron-clad movie deals were far from certain, and that the studios were not at all obligated to make any movies with Peter Bogdanovich. As for the purchasers' previous residences, the Spencers declare the bank holding the mortgage foreclosed on the prior home owned by the Bogdanovichs, and that although the Bogdanovichs continued to live there for years they failed to make mortgage payments, and had since lived in other homes without meeting payment obligations. The Bogdanovichs are also said to have accumulated a vast amount of debt by living beyond their means and paying only those creditors who either pressed or sued them. The Spencers believe the Bogdanovichs could not afford the monthly payments to them on their house and had no intention of making them.
 
 
 9
 The Bogdanovichs moved into the Spencers' house in November 1992 and lived there for several years, but eventually stopped making payments. As a result, the Spencers were forced to default on their mortgage payments and lost their home to foreclosure in March 1996.
 
 
 State Court Proceedings
 
 
 10
 In February 1995 the Spencers — along with Gerald Schneiderman, an assignee of a portion of the Spencers' claim — filed suit in California Superior Court. Defendants included the Bogdanovichs, Peiffer and other individuals, entities and "Does" alleged to be agents, principals, partners, associates, joint venturers, employees and/or co-conspirators of the Bogdanovichs. The Spencers' complaint alleged causes of action for breach of contract, fraud and negligent misrepresentation. It did not identify all of the above-recited misrepresentations and concealments, but instead stated that liability would also be premised on other representations and concealments "according to proof."
 
 
 11
 The case was tried against Peter Bogdanovich and three co-defendants in May 1997, but plaintiffs dropped their claims against his wife, Louise Bogdanovich. After ten days of trial, the jury returned a general verdict solely against Peter Bogdanovich, awarding Schneiderman $250,000 in damages and the Spencers $687,000 in compensatory damages and $3.25 million in punitive damages. The jury had been instructed that it could award punitive damages only upon a predicate finding of oppression, fraud or malice.
 
 
 12
 On May 30, 1997 — one day after the jury returned its verdict — the Bogdanovichs filed a Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York (Garrity, J.). Pursuant to 11 U.S.C. § 362(a) (2000), the Bogdanovichs' assets became subject to an automatic stay, which thereby prevented the Spencers from taking any further action on their favorable California verdict.
 
 
 Bankruptcy Proceedings
 
 
 13
 The Spencers and Schneiderman thereupon filed an adversary proceeding in the bankruptcy court on September 22, 1997 seeking to establish the nondischargeability of the debt that was owed them under the verdict of the California state court. In April 1998 they moved to lift the automatic stay so that a judgment could be entered in California Superior Court and so that any appeals involving Peter Bogdanovich could be taken. The Spencers indicated that if a favorable final judgment were obtained in state court, they intended to move for summary judgment in the adversary proceeding on the basis of collateral estoppel. The Bogdanovichs opposed the motion to lift the stay and moved to dismiss the adversary proceeding. In December 1999 the bankruptcy court granted relief to the Spencers by lifting the automatic stay, and denied the Bogdanovichs' motion to dismiss the proceeding.
 
 
 14
 The Bogdanovichs filed a timely notice of appeal with the United States District Court for the Southern District of New York (Koeltl, J.), which heard oral argument on November 3, 2000. On November 24 it issued a decision affirming the lifting of the automatic stay. With respect to the Bogdanovichs' motion to dismiss the adversary proceeding, the district court determined that the bankruptcy court order was interlocutory, which meant the Bogdanovichs were not entitled to an appeal as of right. After reviewing the nature of the underlying motion, the district court in its discretion denied the Bogdanovichs leave to appeal the interlocutory order denying the motion to dismiss. Judgment was entered on January 4, 2001.
 
 
 15
 Although the Bogdanovichs appealed each of the district court's decisions, only the decision relating to the lifting of the stay is properly before us. We earlier dismissed that part of the appeal pertaining to the Bogdanovichs' motion to dismiss because it was not a final appealable order. For this reason, although Schneiderman is listed as an appellee in the caption of the pending appeal, he is not involved in the instant dispute because he was not a party to the motion to lift the stay.
 
 
 16
 With that recitation of the facts and the prior proceedings, we turn to a discussion of the law.
 
 DISCUSSION
 I Standard of Review
 
 17
 Because the district court acted as an appellate court in a bankruptcy case, its decision is subject to plenary review. McCord v. Agard (In re Bean), 252 F.3d 113, 116 (2d Cir.2001). We therefore independently review the legal conclusions and factual determinations of the bankruptcy court de novo, Bell v. Bell (In re Bell), 225 F.3d 203, 209 (2d Cir.2000), mindful that the original decision to lift the stay may be overturned only for an abuse of discretion, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir.1999).
 
 II Lifting the Stay
 A. Justification for Relief
 
 18
 Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as an automatic stay to give a debtor a short respite from creditors' demands, during which a debtor will "have the opportunity to develop and implement plans" to right his financial affairs. In re 160 Bleecker St. Assocs., 156 B.R. 405, 411 (S.D.N.Y.1993). Relief from the stay may be granted after notice and a hearing, among other reasons, "for cause." 11 U.S.C. § 362(d)(1). The burden is on the moving party, here the Spencers, to make an initial showing of cause. Absent such showing, relief from the effect of a stay will be denied. In re Mazzeo, 167 F.3d at 142.
 
 
 19
 Although the term "for cause" is not defined in the bankruptcy code, we have adopted 12 factors to consider when deciding whether or not to lift a stay in order that litigation may continue to completion in another tribunal. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285-86 (2d Cir.1990). These factors are set forth in the margin.[1] Not every one of these factors will be relevant in every case. In re Mazzeo, 167 F.3d at 143. The ultimate determination whether to lift a stay depends upon the facts underlying a given motion. See In re Sonnax, 907 F.2d at 1286. Sonnax factors (1), (10) and (12) are relevant to the facts of this case. These factors are: "(1) whether relief would result in a partial or complete resolution of the issues; ... (10) the interests of judicial economy and the expeditious and economical resolution of litigation; ... and (12)[the] impact of the stay on the parties and the balance of harms." Id.
 
 
 20
 As noted, the Spencers contend that if the stay were lifted to allow them to obtain a final judgment in California, that judgment would be dispositive of the issues raised in the adversary proceeding in the bankruptcy court. In examining the Spencers' proposition we begin by observing that a federal court decides whether to give preclusive effect to state judicial proceedings by looking to the law of preclusion in that state. Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380-81, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Under California law, a judgment (much less a verdict, which is all the Spencers have here) is not final for collateral estoppel purposes until the appellate process has concluded or the time to take an appeal has passed. Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 90 (2d Cir.2000); Wright v. Turner (In re Turner), 204 B.R. 988, 992 (B.A.P. 9th Cir.1997). Collateral estoppel would then apply only with respect to issues "actually and necessarily decided" by the jury. People v. Howie, 41 Cal.App.4th 729, 48 Cal.Rptr.2d 505, 508 (1995). The bankruptcy court in the Bogdanovich case made no determination regarding whether collateral estoppel would apply; instead it deferred decision on that issue until a final judgment had been entered in California.
 
 
 21
 The Spencers' adversary proceeding relies exclusively on the nondischargeability provisions in 11 U.S.C. § 523(a)(2)(A) and (a)(6) (2000). Section 523(a)(2)(A) provides that a debt for money will not be dischargeable in bankruptcy if obtained by "false pretenses, a false representation, or actual fraud." Section 523(a)(6) further states that a debt "for willful and malicious injury by the debtor" is nondischargeable. The Spencers reason that these sections are applicable in light of the California jury's finding of fraud and conduct warranting punitive damages.
 
 
 22
 The Bogdanovichs counter that pursuit of a final judgment is futile. They argue that even were the verdict embodied in a judgment, the nondischargeability rule in § 523(a)(2)(A) would not apply because it contains an exception for "a statement respecting the debtor's ... financial condition." According to § 523(a)(2)(B), such statements can form the basis for a nondischargeable debt only if in writing. Oral statements relating to a debtor's financial condition thereby remain dischargeable. See also In re Kiernan, 17 B.R. 362, 365 (Bankr.S.D.N.Y.1982) (noting that as between oral and written statements of financial condition, only the latter provide a basis for nondischargeable debt). The Bogdanovichs point out that Peiffer's representations were never reduced to writing, and they argue that his oral statements related solely to their financial condition. They then suggest that the absence of actionable statements under § 523(a)(2) means no cause of action can be sustained under § 523(a)(6). See McCrary v. Barrack (In re Barrack), 217 B.R. 598, 606 (B.A.P. 9th Cir.1998).
 
 B. 11 U.S.C. § 523(a)(2)
 
 23
 The bankruptcy court addressed the Bogdanovichs' argument respecting § 523(a)(2)(A) by itemizing only those allegations from the adversary complaint that it considered actionable under the statute. The district court recognized at oral argument that the bankruptcy court did not attempt to rule on the actionability of all of the statements, and the district court, in its own decision, held that "some of the statements were not `respecting the debtor's... financial condition." (emphasis added) (omission in original). Both courts believed that the actionability of at least a few of the statements warranted an opportunity for the California appellate courts to enter a final judgment, which then might help determine whether the debt is nondischargeable and thereby save time and expense in the adversary proceeding.
 
 
 24
 As the Bogdanovichs maintain, however, such partial findings with respect to the findings of the California jury will prevent the California judgment from having collateral estoppel effect in the bankruptcy proceeding. This obstacle is explained in Bender v. Tobman (In re Tobman), 107 B.R. 20 (S.D.N.Y.1989). In the In re Tobman case, the plaintiff sued in federal court alleging, among other things, fraudulent inducement. Id. at 21. After obtaining a favorable verdict and judgment, the plaintiff initiated an involuntary bankruptcy proceeding against the defendant-debtor and sought an order barring the discharge of the judgment debt pursuant to § 523(a)(2)(A). Id. at 22. The bankruptcy court granted summary judgment to the plaintiff based on collateral estoppel. Id.
 
 
 25
 On appeal, the district court determined that the fraudulent inducement claim in the underlying federal action was based on several statements, some of which met the requirements for nondischargeability and some of which did not. Id. at 23. Because the verdict sheet reflected only that the jury had found for the plaintiff on his fraudulent inducement claim, without indicating which statements formed the basis for that finding, the district court reasoned it could not know whether the jury had "actually decided" that the debtor committed fraud cognizable under § 523(a)(2)(A). Id. at 24. Nor did the court think the jury's award of punitive damages sufficient by itself to invoke collateral estoppel without knowing whether the fraudulent activity was based upon statements other than those relating to the defendant's own financial condition. Id. Accordingly, the district court reversed the bankruptcy court's grant of summary judgment for plaintiff.
 
 
 26
 In the Spencers' California trial, no special verdict form was used and the jury was not asked to identify which of Peiffer's statements formed the basis for liability or punitive damages. Thus, even assuming arguendo the bankruptcy and district courts were correct in ruling that the Spencers had alleged at least some cognizable claims barring the dischargeability of the bankrupt's debt, it is not possible to know whether the underlying California jury verdict rested on those same claims. Equally important, were even one representation underlying the general verdict an oral statement respecting the debtors' financial condition, collateral estoppel could not be invoked in the adversary proceeding. The uncertainty surrounding this issue calls into question the propriety of lifting the stay.
 
 
 27
 The Spencers attempt to evade this obstacle by asserting that none of the representations and concealments included in their California complaint relate to the Bogdanovichs' financial condition. They declare that if every statement alleged were actionable under § 523(a)(2)(A), then knowing which statements formed the basis for a verdict is irrelevant because any one of them would allow for a nondischargeable debt. Although we recognize the logic of that argument, we see two flaws in its reasoning. First, we are uncertain of the actionability of each allegation set out in the California complaint. Second, we do not even know what allegedly fraudulent statements were presented to the jury. Moreover, by refusing to make a premature adjudication on whether collateral estoppel does or does not apply, we avoid entangling ourselves in an abstract disagreement. See Drexel Burnham Lambert Group v. Claimants Identified on Schedule 1 (In re Drexel Burnham Lambert Group), 995 F.2d 1138, 1146 (2d Cir.1993) (discussing the ripeness doctrine).
 
 
 28
 In determining whether a statement relates to a debtor's financial condition, courts agree the term is not limited to formal financial statements. See Norcross v. Ransford (In re Ransford), 202 B.R. 1, 4 (Bankr.D.Mass.1996). Two views have emerged over how to interpret the scope of § 523(a)(2)(A)'s exception. A broad interpretation would include any statement that reflects the financial condition of the debtor. Id. On the other hand, a narrow interpretation would find that a statement relates to financial condition only when it provides information "as to [a debtor's] overall financial health." Id.
 
 
 29
 Courts are sharply split on which interpretation to adopt. Compare Engler v. Van Steinburg (In re Van Steinburg), 744 F.2d 1060, 1061 (4th Cir.1984) (broad), Blackwell v. Dabney (In re Blackwell), 702 F.2d 490, 492 (4th Cir.1983) (broad), Armbrustmacher v. Redburn (In re Redburn), 202 B.R. 917, 927-28 (Bankr.W.D.Mich. 1996) (broad), Beneficial Nat'l Bank v. Priestley (In re Priestley), 201 B.R. 875, 882-83 (Bankr.D.Del.1996) (broad), Hudson Valley Water Res., Inc. v. Boice (In re Boice), 149 B.R. 40, 46 (Bankr.S.D.N.Y. 1992) (broad), Harper v. Richey (In re Richey), 103 B.R. 25, 29 (Bankr.D.Conn. 1989) (broad), Conn. Nat'l Bank v. Panaia (In re Panaia), 61 B.R. 959, 960 (Bankr.D.Mass.1986) (broad), Butler v. Roberts (In re Roberts), 54 B.R. 765, 770 (Bankr.D.N.D.1985) (broad), and Citizens & N. Bank v. Phillips (In re Phillips), 27 B.R. 646, 647 (Bankr.M.D.Pa.1982) (broad), with Weiss v. Alicea (In re Alicea), 230 B.R. 492, 503-04 (Bankr.S.D.N.Y.1999) (narrow), Zimmerman v. Soderlund (In re Soderlund), 197 B.R. 742, 746 (Bankr.D.Mass.1996) (narrow), Household Credit Servs., Inc. v. Peterson (In re Peterson), 182 B.R. 877, 880 (Bankr.N.D.Okla.1995) (narrow), Gehlhausen v. Olinger (In re Olinger), 160 B.R. 1004, 1010-11 (Bankr.S.D.Ind.1993) (narrow), Resolution Trust Corp. v. Oliver (In re Oliver), 145 B.R. 303, 305-06 (Bankr.E.D.Mo.1992) (narrow), Jokay Co. v. Mercado (In re Mercado), 144 B.R. 879, 883-85 (Bankr.C.D.Cal.1992) (narrow), Bal Ross Grocers, Inc. v. Sansoucy (In re Sansoucy), 136 B.R. 20, 23 (Bankr.D.N.H.1992) (narrow), Old Kent Bank-Chi. v. Price (In re Price), 123 B.R. 42, 45 (Bankr.N.D.Ill.1991) (narrow), City Fed. Sav. Bank v. Seaborne (In re Seaborne), 106 B.R. 711, 714 (Bankr.M.D.Fla. 1989) (narrow), D. Nagin Mfg. Co. v. Pollina (In re Pollina), 31 B.R. 975, 978 (D.N.J.1983) (narrow).
 
 
 30
 We have not yet taken a position, and we need not do so in this case. For even under a narrow interpretation — which would be more favorable to the Spencers — some of the alleged oral representations by Peiffer would likely relate to the Bogdanovichs' financial condition. Such representations include, for example, the statements that Mr. Bogdanovich could afford the Spencers' house and that the Bogdanovichs were not in debt and had good credit. Cf., e.g., In re Alicea, 230 B.R. at 504 (holding that statement about debtor lacking present ability to pay was essentially statement of insolvency); In re Sansoucy, 136 B.R. at 23 (holding that representation as to financial solvency of partnership was statement of financial condition because it reflected overall economic condition of partnership); Volk of Phila., Inc. v. Gelfand (In re Gelfand), 47 B.R. 876, 878 (Bankr.E.D.Pa.1985) (construing representation of solvency as financial statement), overruled on other grounds, Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is a matter of some significance that the bankruptcy court, in finding that certain of the Spencers' allegations in the "Adversary Complaint (and the California Complaint)" did not relate to the Bogdanovichs' financial condition, made no findings with regard to these two statements.
 
 
 31
 In the end, however, we need not determine the actionability of any of the statements. Indeed, considerations of justiciability prevent us from doing so. Before determining which statements are actionable under § 523(a)(2)(A), it must first be known which statements were in fact submitted to the jury for its consideration. The reason we lack such information is that the complaint the Spencers filed in their state court action contains fewer alleged representations and concealments than their complaint in the federal bankruptcy adversary proceeding. Because we were not furnished with a transcript of the California proceedings, it is not possible for us to know whether the additional allegations in the adversary proceeding are new, or whether they were submitted to the jury by way of the catch-all phrase in the state complaint that liability was based upon other representations and concealments "according to proof." Nor do we know in what form the statements were submitted to the jury. The parties' briefs are of little help in resolving this question. The Bogdanovichs' brief focuses on the complaint in the adversary proceeding, while the Spencers' brief focuses on the complaint in state court.
 
 
 32
 Because only issues "actually and necessarily decided" in a previous action can have collateral estoppel effect under California law, a court cannot apply collateral estoppel unless the issue decided in the prior adjudication is identical with the one set forth in the present action. Howie, 48 Cal.Rptr.2d at 508. We do not know precisely what those issues are, and thus any decision to apply the doctrine of collateral estoppel in the Spencers' case would amount to little more than a speculative guess. If it were later shown that only a fraction of the alleged representations were submitted to the jury, then a ruling as to any other representations would be merely advisory, the sort of ruling we lack the power to make. United States v. Broad. Music, Inc., 275 F.3d 168, 179 (2d Cir.2001).
 
 
 33
 While lifting the stay may nevertheless be justified under the Sonnax factors if the California appeals process would, with some certainty, resolve these outstanding questions, neither the courts below nor the Spencers explain how we might expect definite answers unless the jury verdict is vacated. But the Spencers certainly are not seeking such an outcome. Therefore, we see no reason why the stay was lifted for their benefit. Further, we have no knowledge of what issues the Bogdanovichs would raise on appeal in California or whether those issues would require the appeals court to delineate which statements were submitted to the jury. And, even if the California courts did clear up this evidentiary question, we have no reason to believe that any decision in the state courts would clarify which statements relate to the debtors' financial condition, when that is a term of art embodied in federal bankruptcy law.
 
 
 34
 Without any clear articulation as to how a decision by the California courts would assist the federal courts in deciding whether to apply collateral estoppel, the key factors set out in Sonnax cannot be weighed properly. Too much uncertainty exists over the evidence at trial to determine whether lifting the stay would result in a partial or complete resolution of the issues in the adversary proceeding. A strong probability exists therefore that an appeal in the California courts would be of little or no help in the adversary proceeding, and would result only in a waste of California's judicial resources, if the issues will need to be litigated before the bankruptcy court.
 
 
 35
 Finally, if the California appeals process were to produce a judgment that has no collateral estoppel effect in bankruptcy court, then by lifting the stay we would simply be requiring the parties to spend time and money on state court litigation with no ascertainable purpose.
 
 C. 11 U.S.C. § 523(a)(6)
 
 36
 The Spencers declare in the alternative that the decision to lift the stay may nevertheless be affirmed because collateral estoppel would apply to their nondischargeability claims under 11 U.S.C. § 523(a)(6). Although the bankruptcy court commented in dicta on the sufficiency of plaintiffs' claims, it sidestepped the crucial question underlying the Bogdanovichs' opposition: whether an oral statement of financial condition may form the basis for a "willful and malicious injury" under this subsection of the statute. See In re Barrack, 217 B.R. at 606 ("[W]hen a claim has been asserted that is required by the plain language of § 523(a)(2) to be brought exclusively under § 523(a)(2)(B), but it fails under that section due to the lack of a writing, then the claim, which is dismissable under § 523(a)(2), cannot state a claim under § 523(a)(6)."); accord In re Alicea, 230 B.R. at 507-08 (relying on In re Barrack to conclude that "[a] creditor armed only with an oral statement of financial condition should not be able to circumvent these protections by charging that the same conduct produced a `willful and malicious' injury").
 
 
 37
 Even accepting the bankruptcy court's findings that some of the Spencers' allegations in the adversary proceeding do not relate to financial condition, we still do not know which statements formed the basis for the jury verdict. In these circumstances, In re Tobman precludes applying the doctrine of collateral estoppel. Also, we have no decision on the merits of plaintiffs' § 523(a)(6) claims to review for an abuse of discretion. Consequently, it is inappropriate to resolve at this juncture what relationship exists between § 523(a)(2) and (a)(6). This matter must be left to be decided in the first instance by the bankruptcy court, if raised again, on remand.
 
 CONCLUSION
 
 38
 For the foregoing reasons, we conclude the bankruptcy court abused its discretion in lifting the automatic stay. We therefore vacate the judgment of the district court affirming that decision, and remand with instructions to return this case to the bankruptcy court so that further action may be taken in the Spencers' adversary proceeding.
 
 
 
 Notes:
 
 
 [1]
 We consider
 (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for [a defense]; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12)[the] impact of the stay on the parties and the balance of harms.
 In re Sonnax Indus., 907 F.2d at 1286.