In re Richard Roy MULDER and
Tami Sue Mulder, Debtors.

First Federal Bank, Plaintiff

v.

Richard Roy Mulder and Tami
Sue Mulder, Defendants.

Bankruptcy No. 03–00039S.
Adversary No. 03–9041S.

United States Bankruptcy Court,
N.D. Iowa,
Western Division.

Feb. 19, 2004.

A. Frank Baron, Sioux City, IA, for Debtors/Defendants.

Jeffrey L. Poulson, Sioux City, IA, for Plaintiff.

## MEMORANDUM DECISION

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matter before the court is First Federal Bank's complaint to determine dischargeability of its claim against Richard Roy Mulder and Tami Sue Mulder, the

debtors. Final trial was held on January 14, 2004 in Sioux City. Jeffrey L. Poulson appeared as attorney for First Federal Bank (hereinafter "Bank"). A. Frank Baron appeared as attorney for Richard and Tami Mulder. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### Findings of Fact

Richard and Tami Mulder, husband and wife, filed their joint chapter 7 petition on January 7, 2003. Their schedules indicated their indebtedness to Bank as a secured creditor holding a security interest in a 1991 Chevy Lumina and a 1992 Ford Ranger pickup. They listed their debt to the Bank in the amount of $7,428.87 and the value of the two vehicles as $2,000.00.

On November 14, 2001, the Mulders entered into a consumer loan transaction with Bank. The Bank loan officer for the transaction was Dan Matus. The amount refinanced was $9,669.01. Under the repayment terms, Mulders were to make 31 monthly payments to Bank in the amount of $361.85. The Mulders secured the debt by granting Bank a security interest in the following personalty: 1991 Chevrolet Lumina automobile; 1992 Ford Ranger; a 1990 Bass Tracker 17' boat; a 1995 50–horsepower Mercury motor; and a 1990 Jim Boat trailer (Exhibit 5).

This was not Mulders' first loan transaction with the Bank. The November 14 loan was a consolidation of two or three previous loans and an advance of an additional $1,500.00. Bank had previously taken security interests in the motor vehicles and the boat, motor, and trailer. Bank's lien against the title to the Chevrolet Lumina was noted in 1996. Its lien against the Ford Ranger was noted in 1997. Bank sought to perfect its lien against the boat, motor, and trailer by filing a Uniform Commercial Code financing statement with the O'Brien County Recorder. The statement was filed on February 10, 1997.

Bank filed a continuation statement for its filing on January 16, 2001.

Although the boat and the boat trailer were both titled vehicles under Iowa law, Bank did not attempt to have its lien noted on the titles. When Mulders purchased the boat, they financed it through Tyson Credit Union, a lender associated in some way with Mr. Mulder's employer. The credit union's lien was noted on the title to the boat. Matus testified that in taking the boat and trailer as security for Bank, he was not aware the boat and trailer were titled properties.

By December 2002, Mulders had become delinquent on their November 2001 loan with Bank (Exhibit 5). They met with Matus and executed a Change in Terms Agreement on December 20, 2002. (Exhibit 2). The effect of the agreement was to bring the November 2001 note current. It added two delinquent payments to the end of the loan period, extending the payments past the original June 20, 2004 maturity date. There was no change in the interest rate. There was no new money advanced, and the collateral remained the same. The Change in Terms Agreement, which was executed by Mulders, stated:

> I acknowledge this Agreement is secured by the following collateral described in the security agreement listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Agreement: motor vehicles, a boat, titled collateral and a trailer described in a Consumer Agreement dated December 20, 2002.

(Exhibit 2.)

The Change in Terms Agreement was prepared by Matus before the Mulders came into the bank to sign it. Matus did not ask them at that time if they still had the two vehicles and the boat, motor, and boat trailer. Matus did not ask the debt-

ors to fill out a financial statement, although they would have been asked to fill out a loan application listing their debts. Bank's consumer loan application form does not request a listing of assets. Matus testified that in November 2001 he believed the boat, motor, and boat trailer had a value of $4,000.00 to $5,000.00. In December 2002, when the loan terms were modified, he believed they had a value of about $4,000.00.

At the time Mulders signed the Change in Terms Agreement in December 2002, they no longer had the boat, motor, and boat trailer. They had sold them in July 2002 for $3,000.00. Mr. Mulder testified that he spoke with a boat dealer before putting the boat, motor, and trailer up for sale. He placed an advertisement showing a sale price of $3,500.00. The best offer he received was for $3,000.00. Mr. Mulder says the motor was worth more than the boat, estimating that at sale the motor was worth $2,000.00 and the boat was worth $1,000.

The buyer's check was made out to Mr. Mulder. He endorsed the check and gave it to Mrs. Mulder who deposited it in their bank account. Mrs. Mulder sent a check of about $620.00 to the credit union to pay off the debt against the boat. The credit union sent the title back to Mulders showing its lien had been released. Mr. Mulder testified that although he thought First Federal Bank had a lien against the boat, he noticed that its name was not on the title as a lienholder. He transferred the title to the buyer. Mr. Mulder testified that he and his wife intended to pay the balance of the sales proceeds to Bank, but that before they could, the child support recovery unit for Iowa seized half of the funds in their account. Whatever amount remained was not paid to Bank.

Matus testified that if he had known the boat, motor, and boat trailer had been sold, he would not have entered into the Change of Terms Agreement with Mulders. He testified that instead he would have required Mulders to cure their loan payment delinquencies up front, rather than by adding the delinquent payments to the end of the payment period on the loan. Matus said he relied on the Bank's continued security in the boat, motor, and trailer in curing the default and extending the payments.

Mr. Mulder knew that the Bank believed it had a security interest in the boat, motor, and trailer when he sold them. He never told Matus or anyone else at Bank of the sale. Mrs. Mulder testified that she believed that Bank had a lien on the boat, motor, and trailer and that the Mulders could not sell the property without paying Bank. When the Change in Terms Agreement was signed, she saw in the agreement that the Bank still claimed a lien on that property. She denied that she was asked verbally if they still owned the boat, motor, and trailer.

She said she knew it was important for the Bank to know of the sale, but nonetheless she did not tell Matus that they had sold the property. Mrs. Mulder testified that she was concerned about remaining silent, but she said nothing because she believed they would pay the Bank debt, and everything would be all right. The Mulders signed the Change in Terms Agreement on or about December 20, 2002. They signed their bankruptcy petition and schedules on January 5, 2003, and filed them electronically on January 7, 2003. Bank has not attempted to foreclose on or to obtain possession of the two motor vehicles.

## Discussion

Bank contends that its claim against Mulders should not be discharged. It alleges that Mulders' conversion of the proceeds from the sale of Bank's collateral

was a wilful and malicious injury to Bank under 11 U.S.C. § 523(a)(6). Bank alleges also the debt should not be discharged under 28 U.S.C. § 523(a)(2)(B) because the Mulders obtained the Bank's agreement to extend the loan and cure the delinquency by the use of a materially false written statement as to their financial condition. Bank claims the Change in Terms Agreement was such a statement. Bank argues also that the Change in Terms Agreement was a fraudulent representation regarding Mulders' ownership of the boat, motor, and trailer so that the debt should be excepted from discharge under 28 U.S.C. § 523(a)(2)(A).

### Claim Under 11 U.S.C. § 523(a)(6)

Bank asks that its claim be excepted from discharge as a willful and malicious injury to Bank caused by Mulders. Bank says the Mulders converted Bank's collateral. "Willful" means deliberate or intentional. *Johnson v. Logue (In re Logue)*, 294 B.R. 59, 62 (8th Cir. BAP 2003). The injury, not just the act causing injury, must be intended. *Id.* at 63. To be malicious, the debtor's conduct must be targeted at the creditor in the sense that conduct is certain, or almost certain, to cause harm. *Id.* The conduct must "be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from mere legal rights. Moreover, knowledge that legal rights are being violated is insufficient to establish malice, absent some additional 'aggravated circumstances'. . . ." *Barclays Amer./Bus. Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 881 (8th Cir.1985).

Bank contends it was Mulders' sale of the boat without payment of the proceeds to the Bank that constitutes willful and malicious injury. When Mulders sold the boat, motor, and trailer, they deposited the money into their bank account. They paid off the prior lien. Certainly this was no injury to Bank's rights. After payment to the credit union, approximately $2,300.00 remained in the account. At least half of that amount was garnished by the Iowa Child Support Recovery Unit. There was no evidence of when the garnishment took place. None of what remained after the garnishment was paid to Bank. There is no evidence as to when Mulders spent the money or what they spent it on.

The evidence is insufficient for me to find that Mulders' failure to pay the balance to the Bank resulted from an intent to injure Bank. Bank's claim under 11 U.S.C. § 523(a)(6) is denied.

### Claim Under 11 U.S.C. § 523(a)(2)(B)

Bank claims that the Change in Terms Agreement was a written statement respecting the debtors' financial condition which debtors used to obtain a refinancing of credit. Bank contends that the statement was materially false, that it was made with the intent to deceive Bank, and that Bank reasonably relied on the statement in refinancing the credit. Bank, therefore, asks that Mulders' obligation to it be excepted from discharge under 11 U.S.C. § 523(a)(2)(B). The court must determine whether the Agreement is a written statement respecting the debtors' financial agreement within the meaning of the Code.

The relevant paragraphs relate to the collateral securing the Mulders' obligations under the agreement and the underlying promissory note. There are two:

DESCRIPTION OF COLLATERAL. 1991 CHEVROLET LUMINA/ 1992 FORD RANGER/ 1990 BASS TRACKER 17' BOAT/ 1995 50 HORSEPOWER MERCURY MOTOR/ 1990 JIM BOAT TRAILER.

COLLATERAL. I acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein, all the terms and conditions of which are hereby incorporated and made a part of this Agreement: motor vehicles, a boat, titled collateral and a trailer described in a Consumer Security Agreement dated December 20, 2002.

Exhibit 2.

 I agree with the proposition that a statement respecting a debtor's financial condition is a broader category of statement than a formal financial statement. As a result, § 523(a)(2)(B) does not require the statement to be a traditional financial statement. *First National Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997); *Norcross v. Ransford (In re Ransford)*, 202 B.R. 1, 4 (Bankr. D.Mass.1996). Arguably, any statement about any of a debtor's assets or liabilities, in the broadest sense, may relate to and therefore respect a debtor's financial condition. I do not think the statute should be so broadly interpreted. The purpose of the statement must be to indicate the debtor's overall financial condition. *Id.* at 5. The purpose of the statement in the Change in Terms Agreement was to reiterate the items of collateral securing the debt and to confirm the grant of the security interest. The statement said nothing of the Mulders' overall financial condition. Indeed, a borrower signing such an Agreement might be as poor as a church mouse or as rich as Croesus. Because the listing of collateral did not relate to Mulders' overall financial condition, I do not consider the Agreement one respecting the debtors' financial condition. It is, therefore, not actionable under 11 U.S.C. § 523(a)(2)(B).

*Claim Under 11 U.S.C. § 523(a)(2)(A)*

 In the alternative, Bank asks that its claim be excepted from discharge under 11 U.S.C. § 523(a)(2)(A), which excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's financial condition. 11 U.S.C. § 523(a)(2)(A). Bank must prove by a preponderance of the evidence that (1) debtors made a false representation; (2) the debtors knew the representation was false at the time it was made; (3) the debtors made the representation with the intention and purpose of deceiving the Bank; (4) the Bank justifiably relied on the representation; and (5) the Bank sustained the alleged loss and damage as a proximate result of the representation. *Burt v. Maurer (In re Maurer)*, 256 B.R. 495, 500 (8th Cir. BAP 2000).

 The representations at issue are those in the Change in Terms Agreement executed by Mulders on December 20, 2002, which describe the collateral for the obligation to include the 17′ Bass Tracker boat, the 50–horsepower Mercury motor, and the 1990 Jim boat trailer (Exhibit 2). Bank contends that these are representations by Mulders that they are the lawful owners of the property described. I agree. The Change in Terms Agreement makes reference to the Note, Disclosure and Security Agreement executed by Mulders on November 14, 2001 (Exhibit 5). It was that earlier loan document that was modified by the Change in Terms Agreement. The Agreement reconfirmed Mulders' representation that they were the lawful owners of the property (Exhibit 5, page 2, "REPRESENTATION AND PROMISES WITH RESPECT TO THE PROPERTY"). I find also that the Change in Terms Agreement was a refinancing

agreement within the meaning of 11 U.S.C. § 523(a)(2)(A).

Mulders' representation that they were still the owners of the boat, motor, and trailer was false, and Mulders knew it to be false when they signed the Change in Terms Agreement on December 20, 2002. The representation was deliberately made with the intention of deceiving Bank. Mulders were delinquent in their loan payments. The agreement benefited them because it cured the delinquency by allowing their two delinquent payments to be made at the end of the loan period. Had the Agreement not been made, Bank would have required Mulders to cure the default by bringing payments up to date through increasing the amounts of their earliest scheduled payments until they caught up. An inability to cure would have led to acceleration of the balance due on the note and an immediate effort by Bank to recover the collateral. The sale of the boat, motor, and trailer might then have come to light.

Mrs. Mulder saw in the Change in Terms Agreement that the boat, motor, and trailer were still shown as collateral. Each of the Mulders understood that the Bank believed it had a security interest in that property. Mrs. Mulder was uncomfortable in signing the Agreement knowing it was wrong. Each of the Mulders kept silent. They did not tell Matus that the boat, motor, and trailer had been sold in July. Probably by that time, half of the remaining proceeds of the sale had been garnished by the State of Iowa. Mrs. Mulder kept silent because she thought they would pay the Bank, and everything would be all right. I find also that Bank relied on the representation and entered into the refinancing agreement, permitting a long-term cure of the debtors' default and foregoing immediate recourse to its contractual and state-law remedies.

A critical issue in dispute, however, is whether Bank's reliance was justifiable. Justifiable reliance does not mean that Bank's conduct must conform to the standard of the reasonable man. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995)(citing Restatement (Second) of Torts § 545A, Comment b (1976)). The Bankruptcy Appellate Panel for the Eighth Circuit has commented that the standard for showing justifiable reliance under *Field v. Mans* is "fairly low and that a party may justifiably rely on a misrepresentation even when she could have ascertained its falsity by conducting an investigation." *Guske v. Guske (In re Guske)*, 243 B.R. 359, 363 (8th Cir. BAP 2000). But, "if there are any warning signs (i.e., obvious or known falsities, *see* Restatement [(Second) of Torts] § 541) either in the documents, in the nature of the transaction, or in the debtor's conduct or statements, the creditor has not justifiably relied on his representation." *Id.*, 243 B.R. at 363–64. "Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts § 545A, Comment b).

It seems to me true that Bank and Matus, Bank's employee, should be considered as having expert knowledge regarding the making of loans and securing those loans with perfected interests in property of the borrower. Matus should have known that the ownership in the boat would be represented by a title certificate. *See* Iowa Code § 462A.77 (1997). Matus should have known that perfection of Bank's security interest in the boat would be accomplished by noting the lien on the title. Iowa Code § 462A.84(1). This was true in 1997, in 2001, and in 2002. Also,

ownership of the boat trailer would have been shown by a certificate of title. Iowa Code §§ 321.18, 321.20, and 321.24 (1997).

Had Matus checked the State's records in December 2002, he likely would have learned that the boat and trailer had been sold. *See* Iowa Code §§ 462A.77(8) and 321.45 (subs.2, 3) and 321.46. He did not do so. He did not know that the boat was a titled vehicle or that the Bank's lien would be perfected by notation of the lien on the boat's certificate of title.

The failure of Bank to check the title records to verify ownership of the boat and trailer, even though this might have been done at little cost and effort, is not fatal to Bank's claim that it justifiably relied on Mulders' representation that they owned the property. Bank was entitled to rely on Mulders' statement in the Agreement and the affected loan document, unless there were warning signs that the statements were not true. *Sanford Institution for Savings v. Gallo,* 156 F.3d 71, 75 (1st Cir.1998); *Maynard Savings Bank v. Banke (In re Banke),* 275 B.R. 317, 329 (Bankr.N.D.Iowa 2002)(Kilburg, J.).

These decisions are in accord with the Restatement (Second) of Torts § 540, which states that "[t]he recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." The comment to section 540 states that the rule

> is applicable even though the fact that is fraudulently represented is required to be recorded and is in fact recorded. The recording acts are not intended as a protection for fraudulent liars. Their purpose is to afford a protection to persons who buy a recorded title against those who, having obtained a paper title, have failed to record it. The purpose of the statutes is fully accomplished with-

out giving them a collateral effect that protects those who make fraudulent misrepresentations from liability.

Restatement (Second) Torts § 540, Comment b. Therefore, notwithstanding that in December 2002, Bank might have learned from the title records that the boat and trailer were no longer property of the Mulders, I find that Bank justifiably relied on Mulders' statements in refinancing Mulders' debt.

■ The remaining issue is damages— what amount is excepted from discharge. Mulders contend that no new cash was advanced, and therefore, there is no damage to Bank by the extension of the time for making two payments. Also, Mulders allege that because Bank had no lien, sale of the property was not improper, but if Bank had a lien, it could still pursue the collateral and is thus not damaged. I disagree. Bank had a perfected security interest in the motor and an unperfected security interest in the boat (there is nothing in Iowa Code chapter 462A which voids the lien if it is not perfected). I am not sure of Bank's interest in the trailer in December 2002. I believe it was a titled vehicle, *supra,* at 14. However, the parties have not submitted legal authority on the need to note a lien on the title as a step in perfection (*see* Iowa Code § 321.50(1)). There is no evidence Bank had possession of the title to the trailer, so I cannot conclude that the Bank's lien in the trailer was lost under Iowa Code § 321.50(6), either in 1997 or in 2001. Bank had a lien in the trailer, perfected or unperfected. But Mulders' arguments that Bank's lien rights determine damages is not well taken.

The entire debt to Bank is not dischargeable. Once it is proven that refinancing is obtained by fraud, then "any debt" arising from the refinancing is excepted from discharge. *Cohen v. de la*

*Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1214, 140 L.Ed.2d 341 (1998). Mulders refinanced the entire debt, and they obtained that refinancing by fraud. The entire debt is not dischargeable.

IT IS ORDERED that the indebtedness of Richard Roy Mulder and Tami Sue Mulder to First Federal Bank is excepted from debtors' discharges pursuant to 11 U.S.C. § 523(a)(2)(A).

IT IS FURTHER ORDERED that the claims of First Federal Bank against Richard Roy Mulder and Tami Sue Mulder under 11 U.S.C. §§ 523(a)(2)(B) and 523(a)(6) are dismissed.

IT IS FURTHER ORDERED that costs are taxed to defendants. Judgment shall enter accordingly.