**In re Peter BOGDANOVICH and Louise Hoogstratten Bogdanovich, Debtors.**

**In re Aly Spencer, Barry Spencer and Gerald Schneiderman, Plaintiffs,**

**v.**

**Peter Bogdanovich and Louise Hoogstratten Bogdanovich, Defendants.**

**Bankruptcy No. 97–43640 (REG).**
**Adversary No. 97–8972(REG).**

United States Bankruptcy Court, S.D. New York.

Nov. 17, 2003.

The Law Offices of Avrum J. Rosen by Avrum J. Rosen, Huntington, NY, for Defendants–Debtors.

## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ROBERT E. GERBER, Bankruptcy Judge.

This adversary proceeding under the umbrella of a case under chapter 7 of the Bankruptcy Code was commenced after the plaintiffs Aly and Barry Spencer obtained a multi-million dollar jury fraud verdict (for both compensatory and punitive damages) in California state court against debtor Peter Bogdanovich—and Mr. Bogdanovich and his then-wife, debtor Louise Bogdanovich, promptly filed a chapter 7 petition in this Court before either an appeal or even entry of judgment. In this adversary proceeding, the Spencers assert that the debt resulting from the jury verdict they obtained is nondischargeable, under "fraud" and "willful and malicious injury" provisions of the Bankruptcy Code, sections 523(a)(2)(A)[1] and 523(a)(6),[2] respectively.

The Spencers, on the one hand, and the Bogdanoviches, on the other, each move for summary judgment.[3] Although the California jury verdict was a general one unaccompanied by special findings, the

Herzfeld & Rubin, P.C. by Charles A. Crum, Noreen M. Giusti, New York City, for Ali and Barry Spencer.

---

1. Section 523(a) provides, in relevant part:

   (a) A discharge under section 727 of this title does not discharge an individual debtor from any debt—

   . . .

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . .

2. Section 523(a) provides, in relevant part:

   (a) A discharge under section 727 of this title does not discharge an individual debtor from any debt—

   . . .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

3. The Bogdanoviches' arguments relate for the most part to the fraud verdict that was entered against Mr. Bogdanovich alone, after

Spencers contend that they are nevertheless entitled to a nondischargeability finding on their 523(a)(6) claim as a matter of law, by reason of collateral estoppel—based, in turn, on willful and malicious injury they assert the jury necessarily must have found as a consequence of its award of punitive damages in addition to the compensatory ones. Conversely, the Bogdanoviches contend, among other things, that *each* of the misstatements that was alleged in the California state court action was an oral statement with respect to financial condition, non-actionable under section 523(a)(2)(A), and that statements non-actionable under section 523(a)(2)(A) cannot form the predicate for nondischargeability under section 523(a)(6).

For the most part, the Court is not in a position to grant summary judgment to either the Spencers or Mr. Bogdanovich.[4] The Court agrees with Mr. Bogdanovich that section 523(a)(6) cannot be used to bootstrap into nondischargeability oral statements as to financial condition that are not actionable under section 523(a)(2)(A), and since fraud findings that were the underpinnings for the punitive damages award may or may not have been the type that are nondischargeable under section 523(a)(2)(A), the uncertainty as to this matter precludes imposition of collateral estoppel. Thus the Spencers cannot prevail as a matter of law on the record as developed to date.

But the Court cannot grant summary judgment to Mr. Bogdanovich either. At least some of the alleged misstatements that may have led to the jury verdict seemingly were statements as to matters *other than* financial condition, and thus could support a finding of nondischargeability under one or both of sections 523(a)(2)(A) and 523(a)(6). And since the exact nature of each of the statements is at least somewhat debatable, and could turn on the exact words that were said and their context, it would be inappropriate, in the Court's view, to remove from consideration any of the alleged statements at this time. The Court would have to evaluate each statement, in context, to make that determination, and this could appropriately be done only after hearing the proof at trial in this Court.

Thus both the Spencers' and Mr. Bogdanovich's motions for summary judgment are denied.

*Facts*

Discussion of the facts in this matter requires an even greater than usual attention to the distinctions between allegations, evidence in the California state court action (some but less than all of which may have been accepted by the jury), and matters found by the jury. The Court discusses the facts by way of background to lay out the context of the pending motions, and to note those facts that are undisputed, but emphasizes that it cannot and does not find disputed facts on this motion. It notes only the existence of factual disputes.

Background facts were concisely laid out by the Second Circuit in a decision[5] with

---

Mrs. Bogdanovich had been dismissed from the California state court action. Mrs. Bogdanovich also seeks dismissal on summary judgment on separate grounds, based on an argument that the California state court judgment was not against her, and that none of the allegedly false representations had anything to do with her.

4. The Court grants summary judgment dismissing as against plaintiff Schneiderman. And while the Court denies summary judgment as to the Spencers' claims against Mrs. Bogdanovich at this time (as it cannot agree with her present points in this regard), its decision is without prejudice to renewal on alternative grounds.

5. *Spencer v. Bogdanovich (In re Bogdanovich),*

great relevance to the pending motions, addressing matters decided earlier in this adversary proceeding before this Court's appointment to the bench. This Court draws heavily from that background discussion,[6] though it considers it desirable to intersperse within the Second Circuit's background discussion, from time to time, further observations by way of supplementation and emphasis.

### 1. The Sale of the Spencers' Home

In 1992, plaintiffs Aly and Barry Spencer decided to try to sell a home they owned in Beverly Hills, California. In July of that year they met William Peiffer, business manager for Mr. and Mrs. Bogdanovich, who told the Spencers that the Bogdanoviches might be interested in purchasing the Spencers' home and that he was acting as their agent.

### (a) Peiffer's Representations

During the negotiations for a possible sale, Peiffer is alleged to have made various representations that are the subject of this adversary proceeding.[7] So far as the record here reflects, all of those representations were oral. In particular, Peiffer indicated that the Bogdanoviches authorized him to find them a place to live. Peiffer also said that the Bogdanoviches wanted him to represent them in all financial matters, gave him full control over and access to their funds, and requested that he manage their money for them and pay their bills on time. Peiffer said he was hired after Peter Bogdanovich declared bankruptcy. It was Peiffer's task to help Mr. Bogdanovich live within his means by monitoring and controlling his spending.

Peiffer maintained that as a result of his efforts, the Bogdanoviches were now free of debt and had good credit. Peiffer also declared that Mr. Bogdanovich's bankruptcy was a recent one that would prevent Mr. Bogdanovich from seeking such protection from his creditors for years. Peiffer also assured the Spencers that Mr. Bogdanovich could afford to purchase their property, and that he would make timely payments.

Peiffer also told the Spencers they could feel secure in the transaction because the Bogdanoviches would be stable buyers since Mr. Bogdanovich hated to move. Peiffer characterized Peter Bogdanovich as an extremely honest and honorable man, one who paid his debts, as evidenced by the fact that the Bogdanoviches in the past had borrowed large sums of money from him, but always repaid him. Peiffer made other statements pertaining to Mr. Bogdanovich's career. Peiffer told the Spencers that Mr. Bogdanovich was a busy Hollywood movie director who did not have time to attend to his own business affairs, and had several "iron clad" movie

---

292 F.3d 104 (2d Cir.2002) ("*Spencer*").

**6.** See 292 F.3d at 107–109. The Court does not understand the Second Circuit to have made any determinations as to facts either, or to have endorsed or rejected any factual findings in the courts below, though the Second Circuit most assuredly noted uncertainties with respect to potentially relevant facts. See the further discussion of *Spencer*, beginning at page 13 below.

**7.** To avoid burdening this decision, this Court, like the *Spencer* court, has not inserted "alleg-

edly" before each alleged act or representation. Nevertheless, each mention of them must be understood that way. Though evidence was introduced in the California state trial with respect to these matters, there is no way to know, as the Second Circuit noted, see 292 F.3d at 112, whether the jury accepted any one or more of those allegations, and to the extent any decision here would turn on a finding of the truthfulness of any particular allegation, this Court is not now in a position to regard such allegation as proven.

deals that guaranteed him several million dollars.[8]

### (b) Events After The Representations

Relying on Peiffer's representations, the Spencers sold their Beverly Hills home to the Bogdanoviches in 1992 for $1.95 million. The Spencers kept the mortgages, on which the Bogdanoviches were to make monthly payments for ten years, with title to pass upon full payment of the purchase price.

The Bogdanoviches moved into the Spencers' house in November 1992 and lived there for several years, but eventually stopped making payments. As a result, the Spencers were forced to default on their mortgage payments and lost their home to foreclosure in March 1996.

The Spencers now contend that all or many of Peiffer's representations were false because several important facts were concealed from them. For example, they claim Bogdanovich's bankruptcy filing was not recent in relation to the real estate negotiations, but occurred four years prior to the sale of the house. They further contend that the so-called "iron-clad" movie deals were far from certain, and that the studios were not at all obligated to make any movies with Peter Bogdanovich. As for the purchasers' previous residences, the Spencers assert that the bank holding the mortgage foreclosed on the prior home owned by the Bogdanoviches, and that although the Bogdanoviches continued to live there for years, they failed to make mortgage payments, and had since lived in other homes without meeting payment ob-

ligations. The Bogdanoviches are also said to have accumulated a vast amount of debt by living beyond their means and paying only those creditors who either pressed or sued them. The Spencers assert that the Bogdanoviches could not afford the monthly payments to them on their house and had no intention of making them.

### (c) California State Court Action

In February 1995, the Spencers—along with one Gerald Schneiderman, an assignee of a portion of the Spencers' claim—filed suit in California Superior Court. The defendants included, among others, the Bogdanoviches and Peiffer. The Spencers' complaint alleged causes of action for breach of contract, a variety of fraud claims, and negligent misrepresentation. It did not identify all of the above-recited misrepresentations and concealments, but instead stated that liability would also be premised on other representations and concealments "according to proof."

After a ten-day trial, the jury returned a general verdict solely against Mr. Bogdanovich, awarding Schneiderman $250,000 in damages and the Spencers $687,000 in compensatory damages and $3.25 million in punitive damages.

### (d) Mr. Bogdanovich's Representations, Knowledge and Participation

So far as the record here reflects, all of the representations described above were made by Peiffer and not Mr. Bogdanovich.

---

**8.** According to the Spencers' complaint, these or very similar representations were made by Peiffer and two other defendants, Robert Powsner, a lawyer for Mr. Bogdanovich, and Arnold Landau, a "trusted friend," "confident" and "business and legal advisor" for the Spencers themselves. Complaint in California State Case, 2/14/95, ¶¶ 7, 8, 9. Appar-

ently, at the start of the trial, the Spencers dismissed defendant Landau, and the defendants' motion to exclude any reference of settlement with Landau was granted. *See* Minutes of 5/6/97. At the conclusion of the trial, the jury found in Powsner's favor. Minutes of 5/29/97.

The Spencer's complaint in the California state court action sought to hold the Bogdanoviches (initially both of them, and later, after Mrs. Bogdanovich was dismissed, Mr. Bogdanovich alone) liable as "agents, principals, partners, associates, joint venturers, employees and/or co-conspirators"[9] for representations made by Peiffer, who also was a defendant. Mr. Bogdanovich was also charged with having entered into the contract with the Spencers without the intent to perform.

The California court did not ask the jury to make any separate findings on the particular causes of action as to which it held Mr. Bogdanovich liable, or the representations (if any) made by Mr. Bogdanovich himself. Nor did the California court ask the jury to make any findings as to whether it was basing liability on agency or conspiracy law—or, if so, any knowledge, authorization or ratification on the part of Mr. Bogdanovich of any of the particular representations Peiffer made, or the extent or nature of Mr. Bogdanovich's participation in the alleged conspiracy.[10]

Though the basis for the jury's verdict is accordingly unclear, Mr. Bogdanovich was found to be liable for both compensatory and punitive damages.[11] Interestingly, Mr. Peiffer was not, for damages of either type.[12] Mr. Peiffer's status as the Bogdanoviches' agent was apparently undisputed, and based on the jury charge, Mr. Bogdanovich could have been held liable either as a co-conspirator[13] or under agen-

---

9. Complaint ¶ 3.

10. The Court notes that this may be entirely appropriate under California state law, if liability is based on agency or conspiracy law principles. The Court takes no position on this, which is for the California state courts to decide. This Court merely notes that if the jury in the California state court action could make its determination under California law in that fashion, it had no occasion to make findings as to matters that would be important for this Court to know in a nondischargeability action.

11. See Minutes of State Court Action Proceedings (Giusti Aff. Exh. D) for 5/29/97.

12. Id.

13. See Jury Charge (Giusti Aff. Exh. E) at 55–58. It provided, it relevant part:
    Each member of a conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if such act or such declaration is in furtherance of the object of the conspiracy.
    The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators.
    A member of [the] conspiracy is not only liable for the particular wrongful act that to his knowledge his confederates agreed to and did commit, but is also liable for the natural and probable consequences of any wrongful act of a co-conspirator to further the object of the conspiracy, even though such act was not intended as a part of the agreed upon objective and even though he was not present at the time of the commission of such act.
    You must determine whether the defendant was a member of a conspiracy to commit the originally agreed upon wrongful act or acts, and, if so, whether the act alleged was perpetrated by a co-conspirator in furtherance of such conspiracy and was a natural and probable consequence of the agreed upon objective of such conspiracy.
    . . .
    Every person, who joins a conspiracy after its formation, is liable for and bound by the acts done and declarations made by other members in pursuance and furtherance of the conspiracy, before and during the time that he or she is a member of the conspiracy.
    . . .
    Each defendant in this case is individually entitled to, and must receive, your determination whether he was a member of the alleged conspiracy. As to each defendant you must determine whether he was a conspirator by deciding whether he willfully, intentionally and knowingly joined with any other or others in the alleged conspiracy.
    Evidence of a statement made by one alleged conspirator other than at this trial shall not be construed by you as against

136

cy doctrine.[14] The jury verdict, which was a general one,[15] did not state the basis.

After preliminary matters, the jury charge initially laid out the elements of each cause of action—breach of contract;[16] fraud "by an intentional misrepresentation";[17] fraud "by a false promise";[18] fraud "by concealment";[19] and fraud "by a negligent representation."[20] There then followed discussion of principles of law applicable more generally to some or all of those claims. In each case, after referring to the representation or the promise, the

jury charge spoke of such as having been made by the "defendant," without further particularization,[21] and without focusing, at that part of the charge, on whether a particular defendant uttered the words or might be held based on conspiracy or agency doctrine that the jury charge later addressed.[22]

The jury had been instructed that it could award punitive damages, but only upon a predicate finding of "oppression, fraud or malice."[23] As noted, it did not

another alleged conspirator unless you find by a preponderance of the evidence that:
  1. Other evidence independent of the statement has established the existence of a conspiracy to commit a wrongful act at the time such statement was made;
  2. The statement was made while the person making the statement was participating in the conspiracy and that the person against whom it was offered was participating in the conspiracy before and during that time; and
  3. Such statement was made in furtherance of the objective of the conspiracy.
Jury Charge at 56–58 (block caps in original, which make charge difficult to read, changed to normal type; presumed transcription errors corrected).

14. See Jury Charge at 58–59. The jury charge perhaps implied, but did not expressly say, that a principal would be liable for the acts of his agent. The agency portion of the charge provided, in full:

An agent is a person who at a given time is authorized to act for or in place of another person, called a principal. One may be an agent although no payment for services is received. For the purposes of this trial the term "agent" includes employees and the term "principal" includes employers.
It is not necessary that the conduct of the agent be expressly authorized by the principal or be undertaken for the benefit of the principal for such conduct to be within the scope of the agent's authority or employment. Conduct which is incidental to, customarily connected with or reasonably necessary for the performance of an authorized act is within the scope of the agent's authority or employment.

Jury Charge at 58–59 (block caps changed to normal type).

15. See Minutes of State Court Action Proceedings for 5/29/97.

16. Jury Charge at 46–49.

17. Jury Charge at 49–50.

18. Jury Charge at 50–51.

19. Jury Charge at 51–52.

20. Jury Charge at 52–53.

21. Jury Charge at 49, 50, 51, 52 and 53.

22. If, as is possible, the jury found that Peiffer did utter one or more of the misrepresentations alleged, and that such provided the underpinnings for liability on the part of Mr. Bogdanovich, it would appear that if the jury followed the California state court's instructions, it would have found Mr. Peiffer liable under one or another of those components of the jury charge. And if the jury found a conspiracy (another basis under which Mr. Bogdanovich may have been found liable), it would (once more if it followed the charge) seemingly have found Peiffer liable on that ground. As noted, the jury did not find Mr. Peiffer liable at all. This mystery, among others, underscores the points made in *Spencer* vis-à-vis unanswered questions with respect to the basis upon which the jury came back with the verdicts it did.

23. The jury charge stated, in relevant part:
  If you find that plaintiffs Aly and Barry Spencer suffered actual injury, harm, or

award punitive damages against Peiffer, but did award them against Mr. Bogdanovich, without stating the cause of action in connection with which it had awarded them, or the factual predicates upon which it did so. The inferences, if any, that this Court can draw from that unexplained punitive damages award are a matter of sharp dispute in this adversary proceeding.

*The Bogdanoviches' Bankruptcy Case*

On May 30, 1997—one day after the jury returned its verdict—the Bogdanoviches filed a Chapter 7 petition in this Court. This case was assigned to this Court's predecessor, Hon. James Garrity. With that filing, section 362's automatic stay became applicable, thereby preventing the Spencers from taking any further action on their favorable California verdict.

The Spencers and Schneiderman thereafter timely filed this adversary proceeding, in September 1997, seeking to establish the nondischargeability of the debt owed to them under the verdict of the California state court. In April 1998 the Spencers moved to lift the automatic stay so that a judgment could be entered in the California Superior Court, and so that any appeals involving Peter Bogdanovich could be taken—indicating that if a favorable final judgment were obtained in state court, they would move for summary judgment here on the basis of collateral estoppel.

The Bogdanoviches opposed the Spencers' motion to lift the stay, and moved to dismiss this adversary proceeding. In December 1999, Judge Garrity granted relief to the Spencers by lifting the automatic stay, and denied the Bogdanoviches' motion to dismiss.

This Court succeeded to Judge Garrity's caseload while the appellate processes concerning those decisions were pending. Matters in this adversary proceeding—which likely would be affected in significant part by any further decision in the California courts, the district court, or, if applicable, the Second Circuit—were held in abeyance pending rulings in one or more of those forums.

*Spencer*

Judge Garrity's decision lifting the stay was affirmed by the district court, and leave for the Bogdanoviches to appeal his denial of their dismissal motion (which was plainly interlocutory) was denied by the district court. But the decisions of the two

---

damages caused by defendants you may then consider whether you should award punitive damages against defendants, for the sake of [example] and by way of punishment. You may in your discretion award such damage, if, but only if, you find by clear and convincing evidence that said defendant was guilty of oppression fraud or malice in the conduct on which you base your finding of liability.

"Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard for the rights and safety of others.

A person acts with conscious disregard of the rights or safety of others when he is aware of the probable dangerous consequences of his conduct and willfully and deliberately fails to avoid those consequences. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

"Despicable conduct" is conduct which is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people.

"Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant or thereby depriving a person of property or legal rights or otherwise causing injury.... Jury Charge at 59–60.

lower courts granting relief from the stay were reversed by the Second Circuit. *Spencer*, while in the context of determining the benefits and detriments of relief from the stay, provided significant guidance on dealing with any aspect of this case that might rest on collateral estoppel.

The two lower courts, reasoning that proceedings here on the Spencers' section 523(a)(2)(A) claims could be expedited if, as the Spencers maintained, collateral estoppel were applicable, had granted relief from the stay to allow the California courts to enter judgment and to consider the Spencers' judgment on appeal—as each of those would apparently be required, under California law, for the jury verdict to be usable for collateral estoppel purposes. But the *Spencer* court ruled that collateral estoppel would not be applicable on the section 523(a)(2)(A) claims even if the California courts entered judgment on the jury verdict, and the California state court judgment then was affirmed.[24] The *Spencer* court held that relief from the stay premised on the assumption that further proceedings in the California courts would assist in dischargeability determinations in this Court was based on that erroneous premise.

The problem was that while a number of misrepresentations were alleged in the California state court action (some or all of which were submitted to the jury), and any of them might have supported the jury's verdict under California state law, not all of them would *also* pass muster under the federal bankruptcy law requirement for nondischargeability under section 523(a)(2)(A) that statements as to financial condition must be in writing. All of the alleged statements were oral, and some were (or were likely to be) related to financial condition, and some were (or were likely to be) not. There was no way, upon the jury's general verdict, to know whether its verdict was based on findings that would also be determinative of the issues in this Court.

*Spencer* relied heavily on the 1989 decision in *Bender v. Tobman (In re Tobman)*,[25] in which Judge Walker (then a district judge) had found collateral estoppel to be inapplicable. The *Spencer* court noted that here, as in *Tobman*, there were differing substantive requirements for finding liability for fraud, on the one hand, and determining whether the fraud liability was nondischargeable, on the other. And here, as in *Tobman*, a jury general verdict did not result in factual findings of sufficient specificity to know the basis for state law liability that the jury found, and thus a finding of nondischargeability could not rest on collateral estoppel.

*Spencer* observed that in *Tobman*, "the fraudulent inducement claim in the underlying fraud action was based on several statements, some of which met the requirements for nondischargeability and some of which did not."[26] The Second Circuit further observed that in *Tobman*, because the verdict sheet reflected only that the jury had found for the plaintiff on the plaintiff's fraudulent inducement claim (without indicating which statements formed the basis for that finding), the district court could not know whether the jury had "actually decided" that the debtor committed fraud cognizable under section 523(a)(2)(A).[27] And it noted Judge Walker's reasoning that the jury's award of

---

**24.** *See* 292 F.3d at 114.

**25.** 107 B.R. 20 (S.D.N.Y.1989) (Walker, J.).

**26.** 292 F.3d at 111–112, *citing Tobman*, 107 B.R. at 23.

**27.** 292 F.3d at 112, *citing Tobman*, 107 B.R. at 24.

punitive damages was insufficient, by itself, to invoke collateral estoppel for application to claims under section 523(a)(2) "without knowing whether the fraudulent activity was based upon statements other than those relating to the defendant's own financial condition." [28]

The *Spencer* court found those same considerations applicable here, and thus concluded that the verdict in the California state court action could not support collateral estoppel as to the federal section 523(a)(2)(A) claims here. It noted:

> In the Spencers California trial, no special verdict form was used and the jury was not asked to identify which of Peiffer's statements formed the basis for liability or punitive damages. Thus, even assuming *arguendo* the bankruptcy and district courts were correct in ruling that the Spencers had alleged at least some cognizable claims barring the dischargeability of the bankrupt's debt, it is not possible to know whether the underlying California jury verdict rested on those same claims. Equally important, were even one representation underlying the general verdict an oral statement respecting the debtors' financial condition, collateral estoppel could not be invoked in the adversary proceeding. [29]

The uncertainty as to that issue, which was a premise upon which relief from the automatic stay was granted in the bankruptcy court, called into question the propriety of lifting the stay. [30]

The Second Circuit noted a divergence in authority with respect to standards applicable in deciding whether oral statements are statements as to financial condition, [31] though it noted that even under the standard that would be more favorable to the Spencers, some of the alleged oral representations by Peiffer "would likely relate to the Bogdanoviches' financial condition." [32] But by reason of the uncertainties noted above as to the proceedings in the California state court action, and to "avoid entangling ourselves in an abstract disagreement," [33] the Second Circuit did not then decide which of the alleged misstatements ultimately might, or might not,

---

**28.** 292 F.3d at 112, *citing Tobman,* 107 B.R. at 24.

**29.** 292 F.3d at 112.

**30.** 292 F.3d at 112. In the Second Circuit, "the Spencers attempt[ed] to evade that obstacle by asserting that *none* of the representations and concealments included in their California complaint related to the Bogdanoviches' financial condition ... [They argued that] if every statement alleged were actionable under section 523(a)(2)(A), then knowing which statements formed the basis for a verdict would be irrelevant because any one of them would allow for a nondischargeable debt." *Id.* at 112. The Second Circuit did not quarrel with the logic, but quarreled with its premise, in two respects. First, the Second Circuit noted, it was uncertain of the actionability of each allegation set out in the California complaint as a matter of California law. Second, it did not even know what

allegedly fraudulent statements were presented to the jury. 292 F.3d at 112.

> The Second Circuit conclusion was correct for a third reason as well. Not only did the Second Circuit not know what allegedly fraudulent statements were *presented* to the jury; it did not know what allegedly fraudulent statements the jury *found.* It is possible that allegedly fraudulent statements were presented to the jury, but that the jury rejected one or more of them, even though it found for the Spencers on others.

**31.** 292 F.3d at 112–113.

**32.** 292 F.3d at 113. It stated, in that connection, that "[s]uch representations include, for example, the statements that Mr. Bogdanovich could afford the Spencers' house and that the Bogdanoviches were not in debt and had good credit." *Id.*

**33.** 292 F.3d at 113.

**140**

be statements of financial condition.[34]

Finally, *Spencer*, after initially considering the matter of dischargeability under section 523(a)(2)(A), turned to dischargeability under section 523(a)(6). It noted that the bankruptcy court had not decided whether an oral statement of financial condition could form the basis for "willful and malicious injury" provision, under section 523(a)(6),[35] a matter that the Second Circuit considered it inappropriate then to resolve. The *Spencer* court stated that this issue should be decided in the first instance by the bankruptcy court, if raised again, on remand.[36]

*Discussion*

*I.*

*Summary Judgment Standards*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [37]

The standards for consideration of a summary judgment motion are not subject to serious dispute.[38] The moving party

**34.** *See* 292 F.3d at 113 ("In the end, however, we need not determine the actionability of any of the statements"). It continued, in this respect:

Indeed, considerations of justiciability prevent us from doing so. Before determining which statements are actionable under § 523(a)(2)(A), it must first be known which statements were in fact submitted to the jury for its consideration. The reason we lack such information is that the complaint the Spencers filed in their state court action contains fewer alleged representations and concealments than their complaint in the federal bankruptcy adversary proceeding. Because we were not furnished with a transcript of the California proceedings, it is not possible for us to know whether the additional allegations in the adversary proceeding are new, or whether they were submitted to the jury by way of the catch-all phrase in the state complaint that liability was based upon other representations and concealments "according to proof." Nor do we know in what form the statements were submitted to the jury....

Because only issues "actually and necessarily decided" in a previous action can have collateral estoppel effect under California law, a court cannot apply collateral estoppel unless the issue decided in the prior adjudication is identical with the one set forth in the present action.... We do not know precisely what those issues are, and thus any decision to apply the doctrine of collateral estoppel in the Spencers' case would amount to little more than a speculative guess.

*Id.* at 113–114. Those observations, and the logic underlying them, are of course binding on this Court. And the logic underlying them raises an additional issue, as suggested above—even though the transcript of the California state court action has now been provided to this Court, and this Court can see what allegations did and did not find their way to the jury. Even with knowledge of what allegedly fraudulent statements were *presented* to the jury, this Court is still not in a position to know what allegedly fraudulent statements the jury *found.*

**35.** 292 F.3d at 114.

**36.** As part of its section 523(a)(6) discussion, the Second Circuit made further observations that are relevant on remand, now that the Spencers seek to invoke collateral estoppel with respect to their claims under section 523(a)(6). It observed:

Even accepting the bankruptcy court's findings that some of the Spencers' allegations in the adversary proceeding do not relate to financial condition, we still do not know which statements formed the basis for the jury verdict. In these circumstances, *In re Tobman* precludes applying the doctrine of collateral estoppel.

292 F.3d at 115.

**37.** Fed.R.Civ.P. 56(c) (made applicable to this adversary proceeding by Fed. R. Bankr.P. 7056).

**38.** With respect to the standards for consideration of summary judgment motions general-

bears the initial burden of showing that the undisputed facts entitle the movant to judgment as a matter of law.[39] Then, if the movant carries this initial burden, the nonmoving party must set forth specific facts to show that there are triable issues of fact, and cannot rely on pleadings containing mere allegations or denials.[40]

In this connection, it is well settled that the court should not weigh the evidence or determine the truth of any matter, and must resolve all ambiguities and draw all reasonable inferences against the moving party.[41] A fact is material if it "might affect the outcome of the suit under governing law."[42] An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[43]

## II.
### The Spencers' Motion
### A.
#### Irrelevant Matters

At the outset, and before addressing matters that properly are before the Court on this motion, it is important to note two that are *not.*

*Existence of Underlying Debt*

■ The first is the matter, discussed at length by the Spencers, as to whether "[t]he California judgment is valid and effective,"[44] or, more accurately, whether Mr. Bogdanovich owes a debt to the Spencers in the amount of the verdict. This adversary proceeding is about the *dischargeability* of Mr. Bogdanovich's debt to the Spencers, not about whether he has such a debt at all. As the Second Circuit's 1986 decision in *Teachers Insurance & Annuity Association of America v. Butler*[45] makes clear, even though the jury

---

ly, *see Capital Commercial Properties, Inc. v. Ames Realty II, Inc. (In re Ames Department Stores, Inc.)*, 288 B.R. 339 (Bankr.S.D.N.Y. 2003), *aff'd* 2003 U.S. Dist. LEXIS 10310 (S.D.N.Y. June 17, 2003), *summarily affirmed*, No. 03–5049 (2d Cir. Oct. 22, 2003).

**39.** *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–1061 (2d Cir.1995); *Ferrostaal, Inc. v. Union Pacific R. Co.*, 109 F.Supp.2d 146, 148 (S.D.N.Y.2000) ("The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact ...").

**40.** Fed.R.Civ.P. 56(e). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kittay v. Peter D. Leibowits Co. (In re Duke & Benedict, Inc.)*, 265 B.R. 524, 529 (Bankr.S.D.N.Y.2001) ("[T]he nonmoving party must set forth specific facts that show triable issues, and cannot rely on pleadings containing mere allegations or denials.").

**41.** *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party"); *Virgin Atlantic Airways Limited v. British Airways PLC*, 257 F.3d 256, 262 (2d Cir.2001); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) ("We ... constru[e] the evidence in the light most favorable to the non-moving party.").

**42.** *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**43.** *Id.*

**44.** Spencer's Opening Br. at 9; *see id.* at 9–11.

**45.** 803 F.2d 61, 66 (2d Cir.1986) (decision after trial—there a bench trial—even though not reduced to judgment as of time of chapter 11 filing, was not subject to collateral attack in the bankruptcy court, and was to be honored unless reversed on appeal).

verdict here was not reduced to judgment, it nevertheless gave rise to a debt on the part of Mr. Bogdanovich to the Spencers, in the amount of both the compensatory and punitive damages the jury awarded. It must be regarded in this Court as having given rise to a debt in the Spencers' favor unless it is upset by the California courts. The filing of bankruptcy after verdict and before entry of judgment will at least initially give rise to the automatic stay, protecting a debtor's assets from immediate levy, but it does not make the verdict go away. The Bogdanoviches do not contend otherwise.[46]

*Rooker–Feldman*

The second is the Spencers' invocation of the *Rooker–Feldman* doctrine,[47] which provides in substance that a lower level federal court cannot sit as a court of appeals with respect to a state court judgment.[48] This is simply a variant of the first point that is not before the Court, and does not need to be addressed at any significant length for the same reason.

Once more the Court notes that Mr. Bogdanovich is not asking this Court to take any action with respect to the underlying debt resulting from the California state court jury verdict, and in any event this Court will not do so. The Court assumes, for the purpose of both these motions and the Bogdanoviches' underlying chapter 7 case, that the debt exists. What is before this Court is a separate issue— whether or not that debt is *dischargeable*,

by reason of requirements of federal law as to which the California state courts had no occasion to consider. For the purposes of this motion, and the underlying chapter 7 case, the Court assumes that any and all determinations made in the California state court action were entirely correct.

*B.*

*Ability to Invoke Collateral Estoppel*

The Court then turns to the Spencers' efforts to invoke collateral estoppel to secure a determination of nondischargeability under section 523(a)(6). The Spencers argue in substance that even though the jury returned only a general verdict, and did not articulate the bases for its award of either compensatory or punitive damages, the Court can deduce that the requirements of section 523(a)(6) were satisfied, as a consequence of the jury's award of punitive damages. They argue that since, under California law, an award of punitive damages requires a finding of "oppression, fraud, or malice"—one or more of which, it is argued, would be equivalent to the infliction of "willful or malicious" injury—this Court must conclude that the fraud verdict was nondischargeable under section 523(a)(6), whether or not it was nondischargeable under section 523(a)(2)(A).

Implicit in this argument, however, are two assumptions—the first of which the Court will assume is valid, but the second of which is debatable. The first is that all types of fraud that trigger a punitive damages award constitute "willful and mali-

---

**46.** *See* Bogdanoviches Answering Br. at 6 ("Plaintiffs miss the point. The Second Circuit as well as the Defendants were and are not in any way nullifying the California verdict and/or the entry of the California Judgment in the context of this bankruptcy proceeding.").

**47.** *See* Spencers Opening Br. at 12–20; Spencers Reply Br. at 1–6.

**48.** *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See generally In re Dabrowski,* 257 B.R. 394, 405–406 (Bankr. S.D.N.Y.2001).

cious injury." [49] The second is that fraud that does not pass muster under section 523(a)(2)(A) can nevertheless constitute willful or malicious injury under section 523(a)(6). As noted in *Spencer*,[50] this premise is subject to dispute. The Bogdanoviches challenge this premise, as the principal basis for their opposition to the Spencers' motion.

The Court first deals with the latter assumption, and then considers the motion in light of *Spencer* and other applicable law.

1. *Ability to Base Nondischargeability Under Section 523(a)(6) on Statements Non–Actionable Under Section 523(a)(2)(A)*

■ As noted above, *Spencer* expressly declined to decide, in that procedural context, whether misrepresentations that failed to pass muster under section 523(a)(2)(A) could nevertheless form the basis for nondischargeability under section 523(a)(6). It was left for this Court to consider that issue, in the first instance, on remand.

Upon doing so, the Court agrees with those courts that have held that section 523(a)(6) cannot be used to sidestep section 523(a)(2)(A), and that the requirements Congress imposed in section 523(a)(2)(A) for nondischargeability based on oral misrepresentations cannot be evaded by invocation of section 523(a)(6).

As noted in *Spencer*,[51] two courts have considered whether misrepresentations as to financial condition that fail to meet section 523(a)(2)(A)'s writing requirement can nevertheless satisfy section 523(a)(6). Each has held that they cannot.[52] As the Ninth Circuit Bankruptcy Appellate Panel noted in *Barrack*, where the "willful and malicious conduct" was based on an alleged intentional misrepresentation, "the elements of § 523(a)(2) would also be required in order to state a cause of action under § 523(a)(6)." [53] Allegations that did not satisfy section 523(a)(2) "could not, as a matter of law, meet the requirements of § 523(a)(6)." [54]

The Ninth Circuit B.A.P. held in *Barrack* that the bankruptcy court was correct when it had held that the plaintiff's fraud

---

49. The Court agrees with the Spencers that the jury necessarily must have found fraud, of some type, by someone, and that the jury's punitive damages award precludes a conclusion that the jury awarded compensatory damages for negligence or a breach of contract, or, at least, that it found those alone. Assuming, as the Court believes it needs to do for purposes of this analysis, that the jury followed the California court's instructions, the jury's award of punitive damages leads to the conclusion that it found some kind of fraud, on one or more of the bases that the California state court charged. And it is probably the case, though the matter is closer, that the jury must have found more than recklessness, which presumably would have supported a verdict for fraud but not punitive damages. In light of the Court's analysis of the other assumption underlying the Spencers' motion, the Court assumes, without deciding, that this assumption is valid.

50. *See* 292 F.3d at 114–115. As the Second Circuit put it, a "crucial question" underlying the Bogdanoviches' opposition to the Spencers 523(a)(6) position was "whether an oral statement of financial condition may form the basis for a 'willful and malicious injury' under this subsection of the statute." *Id.* at 114, citing *In re Barrack*, 217 B.R. 598, 606 (9th Cir. BAP 1998), and *Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 507–508 (Bankr. S.D.N.Y.1999) (Bernstein, C.J.).

51. See 292 F.3d at 114–115.

52. *See Barrack*, 217 B.R. at 606; *Alicea*, 230 B.R. at 507–508.

53. 217 B.R. at 606.

54. *Id.*

claims "could not 'simply be moved over to Section 523(a)(6).' " [55]   It continued:

> We hold that when a claim has been asserted that is required by the plain language of § 523(a)(2) to be brought exclusively under § 523(a)(2)(B), but it fails under that section due to the lack of a writing, then the claim, which is dismissable under 523(a)(2), cannot state a cause of action under § 523(a)(6).[56]

Holding similarly is *Alicea.* Citing *Barrack,* though adding to *Barrack's* analysis in light of later case developments and otherwise, Chief Judge Bernstein of this Court came to the same conclusion. Without ruling on whether sections 523(a)(2) and 523(a)(6) would in all cases be coextensive (even though the *Barrack* court had found them to be coextensive there),[57] Judge Bernstein reasoned that one provision of section 523(a) should not be interpreted in a way that obviates the need for another provision of section 523(a).[58]   And he continued:

> Whatever § 523(a)(2)(B) means, it was intended to protect debtors by restricting certain kinds of dischargeability claims based on fraud. A creditor armed only with an oral statement of financial condition should not be able to circumvent these protections by charging that the same conduct produced a

"willful and malicious" injury. Accordingly, fraud claims barred under § 523(a)(2)(B) are also barred under § 523(a)(6).[59]

This Court agrees with the conclusions in *Barrack* and *Alicea.* Section 523 of the Bankruptcy Code embodies an effort on the part of Congress to achieve a delicate balancing—of the desire to provide a "fresh start" for debtors, and of the desire to protect creditors who are victims of fraud. As the Supreme Court stated in its 1991 decision in *Grogan v. Garner:* [60]

> [A] central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." [61]

But it also stated that:

> The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full pay-

---

55.  *Id., quoting In re Barrack,* 201 B.R. 985 (Bankr.S.D.Cal.1996).

56.  *Id.*

57.  See 230 B.R. at 508. After *Barrack* came down, the Supreme Court decided *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974(118), 140 L.Ed.2d 90, holding that "willful," as used in section 523(a)(6), means "a deliberate or intentional *injury,* not merely ... a deliberate or intentional *act* that leads to injury." *Id.* at 57, 118 S.Ct. at 977 (emphasis in the original). Judge Bernstein could envision scenarios under which section 523(a)(2) might be satisfied, but section 523(a)(6) might not be, in cases where mis-

statements actionable under state law might satisfy 523(a)(2) requirements, but nevertheless not establish the intentional injury that now is required under the Supreme Court's 1998 decision in *Geiger.*

58.  *Id.*

59.  230 B.R. at 508.

60.  498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

61.  498 U.S. at 286, 111 S.Ct. 654 (*quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

ment of debts in these categories outweighed the debtors' interest in a complete fresh start.[62]

Section 523(a)(2) effects that Congressional balancing by providing, as a general matter, that liabilities for fraud are nondischargeable. But when statements as to financial condition are involved, section 523(a)(2)(A) imposes an additional requirement that they be in writing. Holding oral statements as to financial condition to support nondischargeability to satisfy section 523(a)(6), when they do not meet the requirements for nondischargeability of section 523(a)(2), would effectively make the latter's additional requirement—one "intended to protect debtors by restricting certain kinds of dischargeability claims based on fraud"[63]—a nullity. This Court fully agrees with Judge Bernstein's observation in *Alicea* that "[a] creditor armed only with an oral statement of financial condition should not be able to circumvent these protections by charging that the same conduct produced a 'willful and malicious' injury."[64]

Thus, whether or not any given fraud might properly be deemed to have given rise to "willful and malicious injury"—and most claims for fraud addressed in section 523(a)(2) (and particularly those that trigger awards for punitive damages) probably would be in this category—section 523(a)(6) cannot be used to sidestep the limitations on nondischargeability that are imposed in section 523(a)(2), and section 523(a)(2)(A) in particular.

*2. Effect of Spencer and Tobman on Section 523(a)(6) Claims*

■ Because section 523(a)(6) cannot be used to sidestep limitations on dischargeability imposed under section 523(a)(2), it is plain to this Court that the same infirmities that were identified in *Spencer*, and by Judge Walker in *Tobman*, preclude summary judgment on the section 523(a)(6) claims here.

---

**62.** 498 U.S. at 287, 111 S.Ct. 654.

**63.** *Alicea*, 230 B.R. at 508.

**64.** *Id.* The Spencers argue that each of *Barrack* and *Alicea* was wrongly decided, but the Court does not agree.

> While it is true, as the Spencers argue, that *Barrack* was decided before *Geiger*, at a time when it was easier to show "willful and malicious" injury, and some nondischargeability claims might pass muster under section 523(a)(2) when they now would fail under section 523(a)(6), the Spencers' arguments fail sufficiently to deal with a very common (if not the most common) situation: when the section 523(a)(2) claims and the 523(a)(6) claims arise out of the same nucleus of facts, and the plaintiff seeking nondischargeability under section 523(a)(6) bases it on inference resting on a fraud verdict as to which the underlying fraud might, but might not, pass muster under section 523(a)(2)(A). In that case, imposition of nondischargeability would

> frustrate the protections Congress put in place in section 523(a)(2), and effectively make them a nullity.
> Then, while it is also true, as the Spencers argue, that Congress could have provided for an express carveout from section 523(a)(6) for willful and malicious injuries that are based on fraud which does not satisfy section 523(a)(2), here (as in the case of so many other issues of statutory construction where Congress could have said something more) there are too many potential reasons as to why section 523(a) was drafted in the manner in which it was for this Court to derive any non-speculative conclusion with respect to a contrary Congressional intent in this regard.
> In any event, with no caselaw support for their position, no more than speculation as to Congressional intent—more properly regarded as suggesting a potentially reasonable approach Congress might take, but not the only one—the Spencers' arguments that this Court should decline to follow the only authority on point are unpersuasive.

The teaching of those cases is that for collateral estoppel to apply, this Court must be in a position to find that the court in which the fraud verdict was entered necessarily decided the same matters that this Court would have to find. Even with the jury's punitive damages award, this Court is not in that position, for the reasons set forth in *Spencer* and *Tobman.*

Of course this Court can conclude, from the jury's award of punitive damages, that the jury found *some* kind of willful or malicious injury, at least by someone. But the jury made no finding as to whether the willful or malicious injury was based on an oral statement as to financial condition (which would not support nondischargeability), or something else (which would). And since nondischargeability under section 523(a)(6) could rest only on a fraud that the jury found was based on something other than an oral statement of financial condition, the deficiencies the Second Circuit found in *Spencer* are equally applicable here.[65] The uncertainty as to the factual predicate for the jury's punitive damages award makes that award inconclusive for section 523(a)(6) purposes here.[66]

---

**65.** *See Spencer,* 292 F.3d at 112 ("Thus, even assuming *arguendo* the bankruptcy and district courts were correct in ruling that the Spencers had alleged at least some cognizable claims barring the dischargeability of the bankrupt's debt, it is not possible to know whether the underlying California jury verdict rested on those same claims. Equally important, were even one representation underlying the general verdict an oral statement respecting the debtors' financial condition, collateral estoppel could not be invoked in the adversary proceeding.").

**66.** There are other uncertainties as well, which, by reason of the analysis above, this Court does not need to explore at length at this time. Given the charge to the jury under which Mr. Bogdanovich's liability could have rested on agency theory or on participation in a conspiracy (as well as his own conduct, *e.g.* by making a promise he did not intend to keep), the jury's verdict might have rested on the act of Mr. Bogdanovich's agent, Mr. Bogdanovich himself, or both. So far as the Court can tell, the jury could have based its award of punitive damages on a theory that Mr. Bogdanovich's *agent* had committed acts warranting punitive damages, and that Mr. Bogdanovich was liable for the acts of his agent. But it is at least arguable, especially after *Geiger,* that for Mr. Bogdanovich's debt to be nondischargeable under section 523(a)(6), Mr. Bogdanovich *himself* must

that led to the Spencers' injury. *See* 523 U.S. at 61, 118 S.Ct. at 977 ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury.") (emphasis in the original).

It also is possible that the jury found that Mr. Bogdanovich was a participant in a conspiracy to defraud the Spencers, which, if a finding had been made to that effect, might support "a willful and malicious" injury, depending on the nature of the conspirators' participation. The problem is that we do not know if that was indeed the basis, or the facts in this respect that the jury found. The fact that punitive damages were not awarded against Peiffer or anyone other than Mr. Bogdanovich—one or more of whom presumably were the other members of the conspiracy—raises issues as to whether conspiracy was or was not the basis. The Court is not in a position to know either way, and the fact that the Court cannot tell raises the concerns articulated in *Spencer* and *Tobman.*

However, the Court rejects Mr. Bogdanovichs contention (Rosen Affirm. in Opp. to Summ. Judgm. 13–14) that an additional issue of fact exists by reason of a supposed release by the Spencers of fraud claims, as assertedly set forth in an August 24, 1993 letter agreement (*id.* Exh. B) with respect to other claims, and, in part, other parties. The language relied

## III.

### The Bogdanoviches' Motion

Mr. and Mrs. Bogdanovich also seek summary judgment, though on separate theories. Mr. Bogdanovich, arguing alleged inconsistencies in the evidence in the California state court action that, if his contentions had been accepted, would have led to no verdict against him in the first place, asks this Court to accept his factual contentions as a substitute for whatever the jury found. Mrs. Bogdanovich (who apparently is no longer married to Mr. Bogdanovich) argues that as the verdict was not against her, the nondischargeability complaint must fail. They also seek dismissal of any nondischargeability claims by Mr. Schneiderman.

### A. Peter Bogdanovich Contentions

■ In support of his own motion for summary judgment, Mr. Bogdanovich, by means of an attorney's affirmation,[67] goes through the various allegations of the Spencers' complaint, arguing why they should not be regarded as true; why they are oral statements as to financial condition; why the Spencers should not have relied on what they allegedly were told, or some combination of those things.[68] These contentions run afoul of the basic principle described above that on a motion for summary judgment, the court cannot weigh the evidence or determine the truth of any matter, and must resolve all ambiguities and draw all reasonable inferences against the moving party.[69] Mr. Bogdanovich may or may not have defrauded the Spencers. And if he did, he may or may not have done so by oral representations as to financial condition which do not support nondischargeability. But his contention that he is now entitled to judgment as a matter of law in this Court, after entry of a jury verdict against him that led to the award of punitive damages and not just compensatory ones, comes close to being frivolous.

---

*other* releases in that letter agreement. *See* Rosen Affirm Exh. B., 8 (waiving Cal. Civ. Code 1542 protection vis-à-vis unknown claims "with regard to each and every release provision herein …"). The only releases with respect to Mr. and Mrs. Bogdanovich were *by* them, and not *of* them (*see* Rosen Affirm. Exh. B., and 3 in particular), and the supposedly "relevant portions of [the trial] transcript, which quoted that release" (Rosen Affirm. in Support of Summ. Judgm. 15) dealt with *others*—Aynsley, Peiffer and Powsner. *Id.* An objection to a question in the California trial that presupposed that the Spencers had released Mr. Bogdanovich was sustained by the California state court as assuming facts not in evidence. *See* Rosen Affirm. Exh. A. at 420.

67. Such a practice is common in New York state courts (though less common on summary judgment motions), but it is not acceptable here. Fed.R.Civ.P. 56(e), made applicable to adversary proceedings by Fed. R. Bankr.P. 7056, provides, in relevant part, that supporting affidavits "shall be made on personal knowledge," and "shall set forth such facts as would be admissible in evidence." Attorneys' accounts of the facts, whether stated by affidavit, affirmation or declaration, are rarely in either category. While for the sake of convenience, this Court, like others, accepts affidavits of attorneys on motions to present documents to the Court whose authenticity is unquestioned, affidavits of attorneys are not a substitute for affidavits of witnesses who are competent to testify.

The Court has considered the exhibits for what they are worth, but having looked in vain for anything as to which Mr. Bogdanovich's counsel would be competent to testify, has deemed the affirmation to be nothing more than another brief.

68. *See* Rosen Affirmation ¶¶ 15–24. *See also* Bogdanovich Opening Br. at 12.

69. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party").

148

Then, in his brief, Mr. Bogdanovich asserts that "*all* of the alleged representations made by the Plaintiffs' [*sic*][70] agent were oral representations as to financial condition."[71] And he goes on to say, rather inexplicably, that "the entire basis for the Plaintiffs' complaint is the alleged issue preclusion that results from the California judgment in this dischargeability action."[72]

The Court finds neither of these contentions to be persuasive either. It is one thing for Mr. Bogdanovich to assert, as the *Spencer* court noted,[73] that one or more of the statements that formed the basis for the jury verdict was, in fact, an oral statement as to financial condition. It is quite another for Mr. Bogdanovich to assert that *every one* of the statements upon which the Spencers assert liability was in that category. Some of the predicates for the alleged fraud—*e.g.*, entering into the contract with an alleged intent not to perform, and having made representations of several "iron-clad" movie deals—likely are not.

Whether these, and others, which are in the gray area, were or were not statements as to financial condition will turn on the exact words used, and the context in which they were used. As the Court is not in a position to apply collateral estoppel, for the reasons described above, it will need to hear testimony with respect to all of the alleged misrepresentations, both to gauge credibility and to determine exactly what was said and its context—all to determine whether or not each alleged misrepresentation was a statement of financial condition.[74] Plainly the Court cannot now determine these issues in Mr. Bogdanovich's favor on a motion for summary judgment.[75]

Finally, the Court is at a loss to understand how "the entire basis for the Plaintiffs' complaint is the alleged issue preclusion that results from the California judgment in this dischargeability action."[76] The fact that this Court cannot apply collateral estoppel does not mean either that the debt to the Spencers has

70. The Court assumes this refers to Peiffer, who was the agent of defendant Mr. Bogdanovich.

71. *See* Bogdanovich Opening Br. at 2 (emphasis added).

72. *Id.*

73. The Second Circuit stated, in that connection, that "[s]uch representations include, for example, the statements that Mr. Bogdanovich could afford the Spencers' house and that the Bogdanoviches were not in debt and had good credit." 292 F.3d at 113.

74. That is true whether the Court applies the "narrow" or "broad" views as to how to define statements of financial condition. In this connection, Mr. Bogdanovich asks this Court (Bogdanovich Opening Br. at 9) to reject Chief Judge Bernstein's holding in *Alicea*, which, among other things, adopted the narrow view. *See* 230 B.R. at 502–503.
But the Court will not do so now. Before it is called upon to decide whether it should de-

cline to follow *Alicea*, the Court believes that it should first ascertain the exact statements in question and their context—and that it would be imprudent to issue a largely advisory opinion now as to this issue before the Court even knows the context in which any such determination would be applied.

75. The Court has assumed, without deciding, that additional insights provided in *Spencer* would provide a satisfactory basis, notwithstanding the law of the case doctrine, to reexamine the original motion to dismiss, or alternatively for summary judgment, filed by the Bogdanoviches in May 1998, which was denied by Judge Garrity. But reexamining the issues there presented, this Court comes to the same bottom line Judge Garrity did. It cannot find on motion that *every one* of the statements upon which the Spencers rely was an oral statement of financial condition, and it finds issues of fact in these and other respects for the reasons noted above.

76. Bogdanovich Opening Br. at 2.

gone away,[77] nor that the Spencers are foreclosed from proving their allegations at another trial here. While the jury verdict in the California state court action, whose purpose at the time was solely to comply with California law, had no occasion to focus on separate federal needs and concerns, the Spencers—who now can and must address the matters of federal bankruptcy law that this Court would need to consider—are free to make whatever showing in this Court that their evidence will support.

## B. Louise Bogdanovich Contentions

■ Mrs. Bogdanovich also moves for summary judgment dismissing the complaint as against her alone. She notes that the California state court judgment "is not against her,"[78] and that none of the allegedly false representations "have absolutely anything to do with Louise Bogdanovich."

But these arguments were rejected by Judge Garrity,[79] and this aspect of Judge Garrity's decision was not criticized, nor were its premises undercut, by anything in *Spencer*. There is nothing in *Spencer*, or otherwise, that would provide a sufficient basis, consistent with the law of the case doctrine, for this Court to revisit Judge Garrity's denial of Mrs. Bogdanovich's motion to dismiss at this time. Here, as with

the Spencers' claims against Mr. Bogdanovich, the Spencers are entitled to submit to this Court such evidence, if any, that they have to show wrongful conduct on the part of Mrs. Bogdanovich of the type that would support nondischargeability.

But this denial of summary judgment now is without prejudice to a future summary judgment motion on Ms. Bogdanovich's part in which she would require the Spencers to put forward any such evidence. The Court has not seen such evidence yet, but is not now in a position to know whether evidence of that character exists. On this motion, the Court considered, but ultimately rejected, granting Mrs. Bogdanovich summary judgment based on the Spencer's failure to provide such evidence now, because that would have been unfair in the procedural context in which this motion has been heard. Mrs. Bogdanovich made her motion on one theory, and the Spencers responded (fully and persuasively) to the points Mrs. Bogdanovich then made. It would be unfair, in this procedural context, to grant Mrs. Bogdanovich summary judgment on a different theory than the one she argued, to which the Spencers had no occasion to respond. The Court will permit Mrs. Bogdanovich, on a subsequent summary judgment motion, to argue that there is no evidence to

---

77. *See* pages 141–142 & n. 45 above.

78. Rosen Affirm. ¶ 26.

79. Decision of December 9, 1999. Judge Garrity there stated:

> [The Bogdanoviches'] argument that we must dismiss the Adversary Complaint as to Louise Bogdanovich because movants do not refer to misrepresentations concerning her financial condition is similarly unpersuasive. In the Adversary Complaint, [the Spencers] allege that William [Peiffer] acted as an agent for both debtors and made representations with the authority, permission and/or consent of both debtors. *See*

> Adversary Complaint ¶ 12. They also allege that both debtors did not intend to comply with their obligations at the time they entered into the contract. *Id.* ¶ 13(j). The fact that the California jury did not render a verdict against her may be a basis for denying summary judgment based upon the preclusive effect of any final judgment, but inasmuch as [the Spencers] adequately pleaded her complicity in the Adversary Complaint, we find that the prima facie validity of those allegations is sufficient to overcome debtors' argument that stay relief would be pointless since movants' claims are legally deficient.
>
> *Id.* at 22–25 (apparent typographical error corrected).

support nondischargeability on her part,[80] but before this Court decides any such motion, the Spencers must get a full and fair opportunity to respond.

### C. Claims on Behalf of Mr. Schneiderman

Mr. Schneiderman did not oppose the Bogdanoviches' motion to dismiss the complaint insofar as it might be deemed to assert claims on his behalf. That aspect of the Bogdanoviches' motion is granted.

*Conclusion*

For the reasons described above,

(1) The Spencers' motion for summary judgment is denied;

(2) Mr. Bogdanovich's motion for summary judgment is denied;

(3) Mrs. Bogdanovich's motion for summary judgment is denied, but without prejudice to a subsequent motion for summary judgment, to the extent consistent with the discussion above; and

(4) The Bogdanoviches' motion to dismiss the complaint insofar as it might be deemed to assert claims on Schneiderman's behalf is granted.

The parties are to confer with each other, at their earliest reasonable convenience, to try to make joint recommendations as to the further proceedings in this case, and shall report their success or failure in this regard to the Court at a status conference to be arranged as early as practicable.

SO ORDERED.

---

**80.** Judge Garrity laid out a roadmap for the necessary evidentiary showing, or at least one possible evidentiary showing. He spoke of whether Peiffer "made representations with the authority, permission and/or consent of both debtors." *Id.* at 24. This may or may not be sufficient to support nondischargeability ultimately—a matter this Court is not now deciding—but what is clear is that at least *some* evidence of this character must be submitted to provide a basis for keeping Mrs. Bogdanovich in this adversary proceeding.